UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | |
|---|---|
| NICHOLAS D. WEBB, | ) |
| Petitioner, | ) ) ) |
| v. | ) )  No. 1:22-cv-00245-JPH-TAB |
| MIAMI CORRECTIONAL FACILITY, | ) ) ) |
| Respondent. | ) ) |

**ORDER DENYING PETITION FOR WRIT OF HABEAS CORPUS AND DIRECTING ENTRY OF FINAL JUDGMENT**

Petitioner Nicholas Webb challenges the outcome of a prison disciplinary hearing and the corresponding sanction that was imposed. For the reasons explained in this Order, Mr. Webb's habeas petition must be **denied**.

**I.   Overview**

Prisoners in Indiana custody may not be deprived of good-time credits or of credit-earning class without due process. *Ellison v. Zatecky*, 820 F.3d 271, 274 (7th Cir. 2016); *Scruggs v. Jordan*, 485 F.3d 934, 939 (7th Cir. 2007); *see also Rhoiney v. Neal*, 723 F. App'x 347, 348 (7th Cir. 2018). The due process requirement is satisfied with: 1) the issuance of at least twenty-four hour advance written notice of the charge; 2) a limited opportunity to call witnesses and present evidence to an impartial decision-maker; 3) a written statement articulating the reasons for the disciplinary action and the evidence justifying it; and 4) "some evidence in the record" to support the finding of guilt.

1

*Superintendent, Mass. Corr. Inst. v. Hill*, 472 U.S. 445, 454 (1985); *see also Wolff v. McDonnell*, 418 U.S. 539, 563-67 (1974).

## II. The Disciplinary Proceeding

On October 14, 2020, Case Worker Ryan Carter wrote a Report of Conduct ("Conduct Report") charging Mr. Webb with violating A-106, Possession of Dangerous/Deadly Contraband/Property. Dkt. 11-1. The Conduct Report states:

> On October 14, 2020[,] at approximately 11:22 A.M.[,] I, Case Worker R. Carter, was assisting with bed moves on the 1/2 side of Charlie Housing Unit (CHU) when I noticed Offender Webb, Nicholas # 209609 CHU-114 attempting to hand some sort of contraband off to another offender. I then approached him and ordered him to give me what he had, at which point he proceeded to flee from me. I gave him multiple commands to stop. He refused all commands. I then witnessed Offender Webb # 209609 reach in his pa[]nts and put an item between a mat and a property box on one of the carts that was between the slider and CHU-103/104 which was getting ready to leave the housing units. I then went over to where the offender was and located a sharpened piece of metal with a fabric wrapped handle where I watched him, Offender Webb #209609, place an item that he was trying to hide from me. I then secured the contraband. I did not find any other contraband on the offender or in his property.

*Id.*

The first hearing was on October 29, 2020. Dkt. 2 at 1. Mr. Webb appealed and on December 9, 2020, the Warden ordered a rehearing. Dkt. 2 at 4. This rehearing is the subject of the pending habeas petition. *Id.* at 1; dkt. 11 at 3.

On December 22, 2020, Mr. Webb received the Conduct Report and the Notice of Disciplinary Hearing ("Screening Report"). Dkt. 11 at 3; dkt. 11-3. He pled not guilty to the charge. Dkt. 11-3. On the Screening Report, Mr. Webb requested (i) to call Mr. Kelsheimer as a witness; (ii) to present the DVR video of

the incident; and (iii) to have a lay advocate appointed.¹ *Id.*; *see* dkt. 11-5 at ¶ 6. Mr. Webb indicated that Mr. Kelsheimer would testify that the weapon did not belong to Mr. Webb and that the video would show that he did not have the weapon on him. Dkt. 11-3.

Mr. Webb's request for a lay advocate was granted. Dkt. 11-4. However, Mr. Webb contends that Hearing Officer Hall conducted the rehearing "with an offender who has not a[n] approved law advocate. . . because DHO Hall had no approved lay advocate with her." Dkt. 2 at 4. Instead, Mr. Webb says that Officer Hall "picked a random offender from P house PHU-42 to be [his] lay advocate." *Id.* The screening officer also attempted to procure Mr. Kelsheimer as a witness, but Mr. Kelsheimer refused to testify. Dkt. 11-5 at ¶¶ 7-8, dkt. 11-8. The hearing officer declined Mr. Webb's request to view the video because of security concerns that viewing the video would permit him "to know camera capabilities and avoid detection in future" and instead provided him with a written summary describing what was depicted on the video:

> On December 28, 2020[,] I (Officer S. Hall) reviewed the DVR of CHU 1/2 on October 14, 2020 starting at 11:22am by the request of Offender Webb, Nicholas in regards to case number MCF 20-10-0214. Upon the review of the DVR[,] I can see C.W. Carter following Offender Webb. I can see Offender Webb at the cart place something under the mat[.] C.W. Carter then walks up to the cart and removes the weapon from the mat that Offender Webb had place[d] there.

Dkt. 11-7.

---

¹ There appears to be a dispute on the spelling of Mr. Kelsheimer's name. Dkt. 11-3 (using the spelling Kelshimer) and dkts. 11, 11-5, and 11-8 (using the spelling Kelsheimer). The Court will use the spelling "Kelsheimer" in this order.

A hearing was held on January 15, 2021. Mr. Webb pled not guilty. Dkt. 11-6. The hearing officer considered Mr. Webb's statement, Mr. Kelsheimer's refusal to testify, the video, the Conduct Report, and the photograph of the weapon, dkts. 11-1, 11-2, 11-6, 11-7, 11-8 and 17, and found Mr. Webb guilty. Dkt. 11-6, dkt. 11-9. The sanctions imposed included a written reprimand, the deprivation of forty-five days of commissary privileges, the deprivation of one year of credit time, a two-step credit class demotion, and the imposition of one year in restrictive housing, suspended. Dkt. 11-9 at ¶ 5.

Mr. Webb appealed to the Facility Head, arguing: 1) the hearing officer violated several parts of the prison's policy and procedures for disciplinary hearings; 2) the hearing officer denied him the opportunity to call exculpatory witnesses and misidentified one of the witnesses; 3) the hearing officer did not provide a written statement in the Hearing Report; 4) the hearing officer denied Mr. Webb the opportunity to view the video and failed to disclose the video summary twenty-four hours before the hearing; 5) the hearing officers for the two hearings gave inconsistent descriptions in their video summaries; 6) the hearing officer did not inform him that a Conduct Report was issued or provide him with notice of the hearing; and 7) the hearing officer convicted him without sufficient evidence. Dkt. 11-10 at 2-4.

His appeal was denied. The Facility Head stated that "[a]ll available information concerning your appeal has been reviewed," and explained:

> The conduct report is clear that you were in violation of an A106. I agree with the sanctions imposed. No procedural or due process errors are noted. A preponderance of the evidence supports the finding and the sanction is an appropriate use of progressive

4

>discipline. Since a liberty interest loss is involved, you may appeal this decision to the final reviewing authority. If you do appeal, please provide a copy of this response with that appeal.

*Id.* at 1.

Mr. Webb then appealed to the Final Reviewing Authority. In denying his final appeal, the Appeal Review Officer stated that "I am in receipt of your appeal of this disciplinary action," and explained: "The procedure and due process of this case appear to be true and accurate. The charge is clear, the evidence sufficient. The sanctions are within the guidelines of the Disciplinary Code for Adult Offenders. There is no present information indicating modification or dismissal is necessary." Dkt. 11-11.

Mr. Webb then brought this petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254.

### III.   Analysis

In his petition, Mr. Webb outlines several grounds for relief based on allegations that the hearing officer violated several prison policies and procedures, dkt. 2 at 3-6, 9-10, and violated his due process rights by convicting him without sufficient evidence, denying him the opportunity to present an exculpatory witness, denying his request to review the video and failing to give him the video summary twenty-four hours before the hearing, and failing to provide a written basis for his decision and the sanctions. *Id.* at 5; 9-11.

#### A. Violations of prison policies

Mr. Webb argues that the hearing officer violated prison policies and procedures relating to approving and appointing lay advocates, documenting

5

denied witnesses and evidence, permitting cross examination and confrontation of witness, complying with rehearing and evidentiary disclosure deadlines, and obtaining signatures for various forms. Dkt. 2 at 3-6, 9-10.

Regarding the lay advocate issue, there is a threshold dispute as to whether the person who the Hearing Officer appointed was qualified to serve as a lay advocate.  The Court need not resolve this dispute because Mr. Webb wasn't entitled to a lay advocate.  A prisoner is not entitled to a lay advocate unless he is illiterate, or the case is complex. *Miller v. Duckworth*, 963 F.2d 1002, 1004 (7th Cir. 1992); dkt. 11 at 12. Here, Mr. Webb was not entitled to a lay advocate because he has not argued that these exceptions applied nor does his petition suggest that he is illiterate or that the issues are complex. Dkt. 2.  Thus, Mr. Webb cannot show a due process violation because he wasn't entitled to a lay advocate.

Respondent also argues that Mr. Webb's allegations based on violations of state policies do not set forth viable due process claims. Dkt. 11 at 13. Prison policies are "primarily designed to guide correctional officials in the administration of a prison" and not "to confer rights on inmates." *Sandin v. Conner*, 515 U.S. 472, 481-82 (1995). Therefore, claims based on prison policy are not cognizable and do not form a basis for habeas relief. *See Keller v. Donahue*, 271 F. App'x 531, 532 (7th Cir. 2008) (rejecting challenges to a prison disciplinary proceeding because, "[i]nstead of addressing any potential constitutional defect, all of [the petitioner's] arguments relate to alleged departures from procedures outlined in the prison handbook that have no

6

bearing on his right to due process"); *Rivera v. Davis*, 50 F. App'x 779, 780 (7th Cir. 2002) ("[A] prison's noncompliance with its internal regulations has no constitutional import—and nothing less warrants habeas corpus review."); *see also Estelle v. McGuire*, 502 U.S. 62, 68 at n.2 (1991) ("[S]tate-law violations provide no basis for federal habeas relief."). Accordingly, Mr. Webb's remaining claims based on allegations that the hearing officer violated the prison's policies and procedures are denied.

### B. Sufficiency of the evidence

Mr. Webb argues that the hearing officer violated his due process rights by convicting him without evidence that the weapon was found on his person or in his cell. Dkt. 2 at 11. Respondent argues that the Conduct Report is sufficient evidence to convict Mr. Webb. Dkt. 11 at 15–17.

In a prison disciplinary proceeding, the "hearing officer's decision need only rest on 'some evidence' logically supporting it and demonstrating that the result is not arbitrary." *Ellison*, 820 F.3d at 274. Further, "the relevant question is whether there is any evidence in the record that could support the conclusion reached by the disciplinary board." *Hill*, 472 U.S. at 455-56; *see also Eichwedel v. Chandler*, 696 F.3d 660, 675 (7th Cir. 2012) ("The some evidence standard . . . is satisfied if there is any evidence in the record that could support the conclusion reached by the disciplinary board.") (citation and quotation marks omitted).

The "'some evidence' standard" is "a 'meager threshold.'" *Jones v. Cross*, 637 F.3d 841, 849 (7th Cir. 2011) (quoting *Scruggs*, 485 F.3d at 939). Once the

7

Court finds "some evidence" supporting the disciplinary conviction, the inquiry ends. *Id.* This Court may not "reweigh the evidence underlying the hearing officer's decision" or "look to see if other record evidence supports a contrary finding." *Rhoiney*, 723 F. App'x at 348 (citing *Webb v. Anderson*, 224 F.3d 649, 652 (7th Cir. 2000)). A conduct report "alone" may establish the "some evidence" requirement. *McPherson v. McBride*, 188 F.3d 784, 786 (7th Cir. 1999).

The Indiana Department of Correction defines possession as "[o]n one's person, in one's quarters, in one's locker or under one's physical control." Dkt. 13 at 6 (emphasis added). Here, the Conduct Report contains "some evidence" supporting the hearing officer's conclusion that Mr. Webb possessed the weapon in violation of A-106. *See* dkt. 11-1. In the Conduct Report, Case Worker Carter stated that he observed the following events relevant to the charged offense: Mr. Webb attempted to hand contraband to another prisoner; Mr. Webb fled when he was ordered to hand over the contraband; Mr. Webb pulled the contraband out of his pants and hid it on the cart; Mr. Carter found a "sharpened piece of metal with a fabric wrapped handle" on the same area of the cart where Mr. Webb hid the contraband; and after Mr. Carter secured the weapon, he searched Mr. Webb and did not find anything on his person. *Id.* This amounts to "some evidence" that Mr. Webb possessed the weapon.

Mr. Webb claims that the video does not show that he put the weapon on the cart or that he ran from Case Worker Carter. Dkt. 2 at 11. He also argues that he was merely pulling up his pants when he was standing next to the cart. *Id.*

8

The Court has reviewed the video, dkt. 17. It shows: Case Worker Carter talking to Mr. Webb and Mr. Webb walking quickly away from Case Worker Carter; Mr. Webb loitering next to a cart and leaning towards the cart before walking away from the cart; Case Worker Carter searching the same area of the cart where Mr. Webb loitered and leaned towards the cart and retrieving the weapon. *Id.* The video is not exculpatory. Although it does not directly show the weapon in Mr. Webb's hand, it corroborates the statements in the Conduct Report and is circumstantial evidence that Mr. Webb possessed the weapon. Because the hearing officer is permitted to rely solely on the Conduct Report and the video does not exculpate Mr. Webb, the hearing officer had sufficient evidence that Mr. Webb possessed the weapon. *McPherson*, 188 F.3d at 786 (stating a Conduct Report "alone" may establish the "some evidence" requirement).

Moreover, Mr. Webb asks the Court to reweigh the credibility of the conflicting witness statements. Dkt. 11 at 16-17. But the Court's role is limited to determining whether "there is any evidence in the record that could support the conclusion reached by the disciplinary board." *Eichwedel*, 696 F.3d at 675. The Court may not "reweigh the evidence underlying the hearing officer's decision" or "look to see if other record evidence supports a contrary finding." *Rhoiney*, 723 F. App'x at 348 (citing *Webb*, 224 F.3d at 652).

The Court finds that the Conduct Report is sufficient evidence of Mr. Webb's guilt. Accordingly, Mr. Webb is not entitled to relief on this ground.

**C. Denial of witness testimony**

9

Mr. Webb argues that the hearing officer violated his due process rights by denying him the opportunity to call Mr. Kelsheimer as a witness. Dkt. 2 at 5, 9. Respondent argues that there was no due process violation because prison officials could not force Mr. Kelsheimer to testify and regardless, Mr. Kelsheimer's proffered testimony was not exculpatory and would not have changed the outcome of the hearing. Dkt. 11 at 8–9.

The Court does not need to determine whether Mr. Kelsheimer's refusal to testify violated Mr. Webb's rights because Mr. Kelsheimer's testimony would not have created a reasonable probability of a different outcome. Mr. Webb believed that Mr. Kelsheimer would have testified that the weapon was his, that is, it belonged to Mr. Kelsheimer. Dkt. 11-3. But this testimony would not have been exculpatory for Mr. Webb because ownership is not an element of a violation of A-106. Dkt. 11 at 8–9 (citing dkt. 11-12 at 2) (defining A-106 as "Possession or use of any . . . dangerous or deadly weapon")); *Piggie*, 344 F.3d at 678 (due process is not violated unless the inmate is deprived of an opportunity to present material, exculpatory evidence). Case Worker Carter saw Mr. Webb pull the weapon out of his pants and hide it on the cart. Dkt. 11-1. Moreover, as noted above, the Court finds that the video corroborates Mr. Carter's account. That evidence is sufficient to support the finding that Mr. Webb possessed the weapon, regardless of who owned it. S*ee Pannell v. Hyatte*, No. 22-1205, 2023 U.S. App. LEXIS 512, at *6-7 (7th Cir. Jan. 10, 2023) (holding that a prisoner may be found guilty of possession of an object even when there is evidence that another person owns the object).

Mr. Webb raises related arguments which can summarized as: 1) Mr. Kelsheimer's witness form did not have Mr. Webb's DOC number; 2) Mr. Kelsheimer did not sign the witness form; and 3) the hearing officer was required to assess Mr. Kelsheimer's credibility. Dkt. 2 at 5, 9. But because Mr. Kelsheimer's testimony would not have been exculpatory to Mr. Webb, any such alleged errors were harmless. *See Piggie*, 344 F.3d at 678 (harmless error applies to prison disciplinary proceedings).

### D. Denial of evidence

Mr. Webb argues that the hearing officer violated his due process rights by denying his request to view the video and failing to give him the video summary twenty-four hours before the hearing. Dkt. 2 at 10. Respondent asserts that the hearing officer was not required to permit Mr. Webb to view the video because it was non-exculpatory evidence and withheld based on legitimate security concerns. Dkt. 11 at 9–10. Additionally, Respondent asserts that Mr. Webb received the video summary twenty-four hours before the hearing, and that Mr. Webb is only entitled to twenty-four hour notice of the charge, but not evidence. Dkt. 11 at 10–11.

Due process is not violated unless the inmate is deprived of an opportunity to present material, exculpatory evidence. *See Piggie*, 344 F.3d at 678. Evidence is exculpatory if it undermines or contradicts the finding of guilt, *see Jones*, 637 F.3d at 847, and it is material if disclosing it creates a "reasonable probability" of a different result, *Toliver*, 539 F.3d at 780-81.

11

Here, Mr. Webb was not entitled to view the video due to security concerns. Dkt. 11 at 10. Prisons may limit evidence disclosures when the disclosure is "hazardous to institutional safety or correctional goals" or "unduly threaten[s] institutional concerns." *Wolff*, 418 U.S. at 566; *Campbell v. Henman*, 931 F.2d 1212, 1214-15 (7th Cir. 1991); *see also Jones*, 637 F.3d at 848–49 (noting that the Seventh Circuit recognizes that there is a "'bona fide security justification' for non-disclosure [when] the video might allow the inmate to 'learn the location and capabilities of the prison surveillance system, thus allowing him to avoid detection in the future.'") (citation omitted). Thus, no relief is warranted on this basis.

Moreover, the record belies Mr. Webb's contention that he did not receive the video summary twenty-four hours before the hearing. Dkt. 11-7 (showing Mr. Webb's signature indicating that he received the video summary on December 28, 2020). And even if Mr. Webb didn't receive the video summary prior to the hearing, Mr. Webb's earlier knowledge of the video summary would not have changed the outcome of the proceedings. *See Piggie*, 344 F.3d at 678 (harmless error analysis applies to prison disciplinary proceedings). Accordingly, Mr. Webb is not entitled to relief on this ground.

### E. Denial of written basis for decision

Finally, Mr. Webb argues that the hearing officer violated his due process rights by failing to provide a written statement on the Hearing Report that identifies the evidence he considered and the reason for the conviction. Dkt. 2 at

10-11.[2] Respondent disagrees, arguing that the hearing officer provided a written statement that satisfies due process. Dkt. 11 at 11-12.

"Due process requires that an inmate subject to disciplinary action is provided a written statement by the factfinders as to the evidence relied on and the reasons for the disciplinary actions." *Scruggs*, 485 F.3d at 941 (internal quotation omitted). The written statement requirement is not "onerous," as the statement "need only illuminate the evidentiary basis and reasoning behind the decision." *Id.* "Ordinarily a mere conclusion that the prisoner is guilty will not satisfy this requirement." *Saenz v. Young*, 811 F.2d 1172, 1174 (7th Cir. 1987). But when a case is "particularly straightforward," the hearing officer need "only to set forth the evidentiary basis and the reasoning supporting the decision." *Jemison v. Knight*, 244 F. App'x 39, 42 (7th Cir. 2007).

Here, the Hearing Report satisfies due process. The Hearing Report states that the: "DHB finds [the offender] guilty of A-106 by [Conduct Report] written by Carter and DVR review." Dkt. 11-6. Additionally, the hearing officer indicated that he sanctioned Mr. Webb to maximum sanctions because he possessed a "dangerous weapon [that] could cause serious bodily injury to another individual." *Id.*; *see also* dkt. 11-9.

The purpose of a written statement in prison disciplinary proceedings is to "ensure both administrative accountability and meaningful review." *Scruggs*, 485

---

[2] Mr. Webb also criticizes the Hearing Officer for failing to explain while he imposed the maximum sanctions, citing prison policy. Dkt. 2 at 11. As explained in Section III.A, prison policies are "primarily designed to guide correctional officials in the administration of a prison" and not "to confer rights on inmates." *Sandin*, 515 U.S. at 481-82.

13

F.3d at 941. The Hearing Report satisfies these purposes, and Mr. Webb does not argue that the written statement on the Hearing Report is inadequate. Dkt. 2. Rather, he argues that the statement does not exist at all. *Id.* at 10-11. Moreover, even if the Hearing Report that Mr. Webb received did not contain the written statement identified above, Mr. Webb has not demonstrated how this prejudiced him. *See Piggie*, 344 F.3d at 678. Accordingly, Mr. Webb is not entitled to any relief on this ground.

### IV. Conclusion

For the reasons stated above, Mr. Webb is not entitled to habeas corpus relief under 28 U.S.C. § 2254. Accordingly, Mr. Webb's petition for a writ of habeas corpus must be **denied** and the action is dismissed.

Judgment consistent with this Order shall now issue.

**SO ORDERED.**

Date: 2/8/2024

*James Patrick Hanlon*
James Patrick Hanlon
United States District Judge
Southern District of Indiana

Distribution:

NICHOLAS D. WEBB
209609
PENDLETON - CF
PENDLETON CORRECTIONAL FACILITY
PENDLETON, IN 46064
Electronic Service Participant – Court Only

Abigail Recker
INDIANA ATTORNEY GENERAL
abigail.recker@atg.in.gov